Good morning, everyone. Our first case today is WEC v. SFA Holdings Inc., Appeal No. 23-1489. Mr. Docketerman. May it please the Court. Thank you, Your Honor. Good morning. You can call us SACs as opposed to SFA Holdings. This is a case where there's nothing in the record to reflect why we should be here. Pardon me, I'm still getting used to two sets of glasses. There's nothing in the record to reflect why we should be here. This is a case in which two different plaintiffs want overlapping pieces of my client's property. Can I ask you a question about that? Please. Especially with respect to the other plaintiff. Isn't that very easy for us to deal with by just saying in an opinion, we hold him to his representation in the district court, and that's it? That's the end of that issue? Your Honor, it depends on which him, because you could hold . . . the way in which this unfolded is, as you look at the complaints, both sides wanted the same money. The him, which is WEC-3, the first plaintiff here, said, okay, I'm only looking for certain money now. But one piece that neither one of them has yet abjured is the money that is owed from the time of this judgment forward. And they all want money through rent through January of next year. But if we accepted that argument, then in every similar case, we'd have to say, oh no, I mean, let's say the lease went another 10 years, wouldn't we say, well, every month Saks is not going to pay rent, and we can drag this out for 10 years before there's any judgment that the plaintiff, whoever is the plaintiff, can appeal under Rule 54? There are two answers to that, Your Honor. The first is that they could have sought a declaratory judgment below, in which case you would have a final disposition and we would know exactly how this works. Both elected not to do so. The second is that if we are correct that the trial court erred on the substantive issues, and I'm more than happy to address the substantive issues, we'd be back here a second time. And that's what the piecemeal litigation argument is all about. There will be serial appeals if this court agrees with us and sends the case back down. That's not what 54B was for. Can I ask you a question? Oh, I'm sorry. Go ahead. Yeah, really following up on the line that Judge Kirsch is pursuing, and I'm going to ask your opponent this, too. I think your argument rests very heavily on what I would call the old installment contract rule that each installment is a new debt, and so at least your opponents are saying that these future rents haven't even come due yet. So what was resolved was a complete case, so to speak. That's what we're looking for in Rule 54B, something that's truly capable of being confined. But I have two questions. One of them is what, in your view, was Mr. Tully talking about when he said we are seeking only quote consequential, close quote, damages? What do you think he means by consequential damages? And the second is this back and forth that happened at the district court level about whether the proper measure of damages was this liquidated damage clause in the lease or whether it was the judge says, oh, we don't have to get that complicated. Let's just do a simple multiplication. Because as I see it, the liquidated damages clause does, in a sense, accelerate. It says that the way you measure the liquidated damages is the excess of the then present value of the basic rent for the remainder of the demise term. It goes all the way out to the end. So if that's at all in play, I would like to know whether you think it is, and if it isn't, where does that take you? Let me answer the first question first, Your Honor, and that is I don't know. You don't know what he meant by consequential damages? I don't know what he meant, because there's a difference of opinion below on what consequential damages are, which is one of the problems with taking this up in different ways. So that's not a defined term in the lease. We just have basic rent and additional rent in the lease. That's correct, Your Honor. So when he talks about consequential damages, I could tell you what the discovery has been below. Right? And what they're really talking about is we owned a property. We thought the property was worth x. We lost the tenant. The property is worth y. The difference between x and y is a consequential damage. But that doesn't sound like consequential damages. I hate to go all the way back to Hadley against Baxendale, but it doesn't sound like that kind of, for want of a nail, the kingdom was lost, consequential damages. That's why I can't really tell you, I can't really answer your first question, because there is a clear difference of opinion on this. One of the problems below, as is evident in the record, is that there was no discovery with respect to this plaintiff. There are six cases, as the record reflects, all of which were brought after the bankruptcy of Carson's. Profits bought Carson's. Carson's became the landlord. The landlords wanted the guarantee of the parent. Not at all an unusual circumstance. What is a little bit unusual here is each of the different plaintiffs here was a family office. And so each one of them thought they were getting a wonderful investment. I bought a piece of property. I have a tenant in that property. I'm sending the rent money directly from the tenant to the bank, and I'm fine. All I do is I take the difference, or I take the depreciation, whatever tax benefit there was. And then, Bonton filed for bankruptcy, and Carson's stopped paying. So there are a number of different- And eventually, Carson's repudiates the lease. Exactly. Rejects the lease. That's exactly right. A different way in each way. In the state, three of these cases are in state court. Three of these cases are in federal court, two in front of the district judge who had this case. But if I'm correct, we're the first appellate court to actually look at this guarantee in this issue, right? That is correct, Your Honor. The guarantees are all a little different, but generally, they're the same. So it's fair to say that we're looking at the same issues. In each of the state court cases, we've now tried the mitigation issue. We've tried including what is a consequential damage, what are the damages that people have. And one of the things that we have learned in those cases is that the steps that people took in order to mitigate their damages, the damages that they claim, and the way- Because this is not the only case in which there's been some effort to divide the proceeds of this deal. The steps that they took altered the risk of the guarantor. One of the errors below, if I may move to substance for a moment and then come back to procedure, one of the errors below is not allowing us to explore that at all. The district judge refused to let us look at anything, refused to let us try anything. And I can tell you that that's why I can't answer your question on consequential damages, because we don't know and didn't know what it was. The rush to this judgment, this partial judgment below, deprived us of the opportunity to assert a number of things which the district court just flat got wrong. And if we're right about that, Judge Kirsch, I come back to your initial question, which is if we go back down below, then we have had this appeal unnecessarily. All of that should have been fleshed out. So I mean, I had exactly Judge Kirsch's original question. If you said we're going to hold you to what you said, true, they didn't amend the pleadings that you pointed out, but it seemed to me what they're now trying to do is say basic rent as defined in the lease up to the final time point, whatever it was, January 2022 or something like that, whatever it was, is now resolved. That can never come back. There's going to be no duplicate call in the guarantee. And if we say that's that, then I don't see how people can back and fill. Now, if it's not so clear, if the consequential damages that are being reserved include part of this, and I also would note that the basic rent in the lease itself is defined in a particular way, additional rent is defined, and then it says tenant will also pay the beneficiary as additional rent interest at the default rate on overdue installments of the basic rent. So there may be overlaps. There is. But if there are, then that's troublesome. There is, Your Honor. And that's a point that we've tried to make below and we've tried to make in the records too. That the stipulation didn't at least clearly enough, maybe it's a question of clarity, I don't know. Well, it isn't even really a stipulation, Your Honor. It's a representation that was made that the district court accepted. But the acceptance of a representation isn't necessarily the litigation position to which they will be held. Now, if this court were to say, to pick up the hypothetical, if this court were to say, we will hold you to that and therefore you have a separable judgment on rent up until now, that doesn't solve the problem of, okay, then am I going to bring another suit for February of 2022 and another suit for March of 2022 or April of 2022, which in theory, because of the argument that's been made by my friends on the other side, they could do. But the declaratory judgment is the proper way of dealing with that. And when these cases get brought, it's how you achieve finality. Is that the only way to do it though? Do they have to seek a declaratory judgment to get a Rule 54 ruling in this case? If you want to uphold all of the other principles of Rule 54, the answer would be yes, Your Honor. Because otherwise, if I may, otherwise, you'll have a circumstance where you continue to February's rent or March's rent. No doubt. No doubt about that. It could alter the issues. Right? I mean, the duty to mitigate is certainly different in month one of a breach lease than it is in month 36, right? So you, but you have the estoppel effect, right, of whatever the district judge decided with respect to the earlier months is going to be at least the rule of the case with respect to the later months. Now, the district judge is going to have to deal with mitigation differently maybe every month. I mean, maybe that's a reason a lot of these cases settle, right? You don't go month to month to month to month to month. But I'm just wondering if declaratory judgment is the only way to do it. Well, may I say it's the best way? It's certainly the cleanest way. And for purposes of finality, it's the only way. There are different ways in these cases. Well, if you'd also gone the liquidated damages route, unless I'm misreading the lease, that also accelerates all the way to the end if it takes you all the way out to the additional rent, the basic rent, additional rent, other sums for the remainder of the demise term. That sounds like all the way out to the end. And if you look at the original motion for partial summary judgment that was filed by Stratford Below, they did prefer that. There are issues with liquidated damages in this case. That would have been briefed, and I suspect, although the trial court did not articulate the reasoning behind this, rejecting that argument and moving instead to this argument, the trial court didn't give us an indication of what it was thinking, which is not the problem with this record. And so the liquidated damages issue was set aside. Liquidated damages would not necessarily be appropriate here under Illinois law. There have been arguments about liquidated damages and acceleration in some of the other cases, not that that is necessarily binding here. But it does suggest the misreading of Illinois law on what mitigation is. And the liquidated damages provision here could very well operate as a penalty. And even though it's a uniform guarantee that was used in a lot of places in a lot of different states, in Illinois, there are specific rules about this, as the court is well aware. And therefore, that may be why the trial court opted to do this. But that's just another one of the problems with the record that this court is facing. The trial court did not articulate why this case needs to go up now, other than saying, I think these facts are different from the facts that bear on the other case in front of me. Mr. Dockterman, I want to ask you a practical question regarding the consequential damages and the representation below. Let's just say, for the sake of argument, we remand this case on the mitigation. And mitigation, particularly, I think it's your position, and I'm sure the appellees will comment on this, but I think it's your position that once the appellees took possession of the property, at least, I know your position is before that, but at least, once they took possession of the property, they had a duty to mitigate. And the district judge allowed absolutely no discovery on that question, and basically eliminated the duty to mitigate. If we were to remand the case on that ground, we would vacate the district court summary judgment order, but then it would be easy for us to send it back for, I guess if we find for you on the multiple parties, it would be easy for us to remand and say, and oh, by the way, when it goes back to the district court, you should determine is there really a second party here as to these damages? But then we're only opening the door for discovery in a very little way, right? Which should be fast, I mean, you're going to do new mitigation discovery for a short period of time, and then you're going to be right back up here. The answer to that is yes and no, as in so many legal questions, right? Yes, it could be short that way, but one of the things that we don't know, if Stratford is the successor to WEC3, and it's willing to take on the issue of mitigation throughout the entire period of time, because that's a door that's open with WEC3 right now, right? And so if they're saying this was my mitigation issue at this point, you also bump into the Illinois law on what the risk of a guarantor is. One of the difficulties in each of these cases has been Illinois law's black letter, that if you change the risk of the guarantor, the guarantee is released. And when you change the incentives that the owner has of the property in order to try to mitigate, you actually change the risk of the guarantor, and we have decisions in Illinois courts to that effect. So if it turns out that the risk change, the steps taken or not taken by Stratford to mitigate after they bought the property, and whether they accept the idea that theirs is only from the period forward, when in fact, you know, they have a judgment that goes back to day one. Right. Right. So have they also bought the duty to mitigate there as well? That's the no part of my answer, and that's why it's complicated. This is what needs to get sorted out. This is what has been sorted out in other cases like this, but didn't get sorted out below because of the straight path the district court took to try to dispose a part of this case. I'm going to speculate maybe because the court thought, once I do that, this case will resolve. It didn't, and one of the reasons it didn't is because we still don't know issues of consequential damages, what the overlap is, what kind of mitigation was done. I think the court is aware that having tried this case three times, there are three very, very different results from the three different trials, ranging from $19,000 in one case to several million dollars in another. Why? Because these are such fact-intensive inquiries. So, Mr. Dockerman, is anything going on at this point in the district court? We're in discovery with WEC-3. So the WEC-3 part is moving along. It is moving along, but one of the issues is what records are there that Stratford has? Stratford now treats itself as a third party, and it is no longer subject to the same kind of discovery that a party would be another one of the evils of prematurely certifying this case under 54B, and I want to come back to both observations. And Stratford eventually comes in under intervention of Wright, isn't that correct? That's correct. Yeah. That's correct. They're both here saying, I've got a piece of this, and they agreed to divide it up, but I'm not sure we're bound by that agreement. I'm not sure the law supports that agreement. It's one of the things that we're having difficulty exploring, and the reason we're having difficulty exploring it is because I only have one of the parties down there at this point. And that's another one of the issues that arises in this case. You have to understand, working backwards, what the law is protecting guarantors and how the risk applies to that, what the law is with regard to the way in which this mitigation was done, how it was done by WEC3, how it was done by Stratford, what the overlap was. There's the complicating factor of a receiver, and the receiver spills over into both of those places. All of that is the kind of thing that we should have had the opportunity to explore, and it is the premature certification and removal of all of that that frankly hampers us in the way in which we are litigating the remaining case below. So to go back to the initial question, could you say, look, we're going to hold them to their representation? Well, you could do that, but that still doesn't satisfy the principles underlying Rule 54B. But can I interject? Maybe this is a merits question and beyond 54B probably is, but one of the things that the district court thought was that under this particular guarantee, you waived all defenses actually, certainly including mitigation. Trial court got that wrong. Trial court got that wrong. I need more than that. Let me explain. Let me explain why. The unconditional language that is used here, and this is not the first time that the courts of Illinois, or at least federal courts in Illinois have considered this, understands what that means. That means we don't make you go after the tenant first, fail with the tenant, and then come after us. You step into their shoes. That's why twice in this guarantee, we are not only called a guarantor, but we are also called a surety, because the surety is responsible for the performance, the guarantor for the nonpayment. And the district court made an assumption and construed the language of the guarantee in a way that's inconsistent with Illinois law and with the way in which it has been construed in the other cases that have been tried. Right. But the language I'm looking at, tenant's liability, tenant, you say you stand in the shoes of the tenant. We stand in the shoes of the tenant, correct. Tenant's liability and obligation here under shall be absolute and unconditional and shall not be subject, I'm eliding a little bit, to any defense as a result of a bunch of things, including bankruptcy, without limitation, blah, blah, blah. It's pretty broad language. It is. There are exceptions. If you're looking at the second page of the guarantee and you go to the third page of the guarantee, there's an exception to Clause F on certain assignments. There are other things that can be done. The language is there in order to allow the landlord to come after us, but it doesn't remove our ability to assert the defenses of the tenant. The landlord doesn't suddenly- So you say the defenses of the tenant flow through to you. That's correct, Your Honor. But if the tenant has lost its defenses, then you didn't receive anything in that flow through. That's absolutely correct, Your Honor. We don't have anything superior to the tenant, but we also are not inferior to the tenant, and an error below was to conclude that we are inferior to the tenant. That's just not Illinois law, and that's well covered in our briefs. I am now at the point where I have reserved time, unless the court has questions right now. That's fine. Go ahead. You can reserve the rest of your time. Thank you very much. Mr. Proceda. May it please the court, let me take just a moment to say at the outset how pleased I am to be appearing in person in a suit in a courtroom. There are so few courts that have resumed in-person hearings, and it's a disappointment to me because I think this is the most enjoyable part of the practice, and I think things go better when we all get together. That said, Your Honor, let me first address the rush to judgment here. I would like to point out that February— By which do you mean first address 54B? Because that's definitely what I'm interested in. Okay. Well, and of course my interests coincide with the panel's interests, so we can go straight to that. My concern on that point is when we talk about a rush to judgment here, February 13th will be the sixth anniversary of the first demand letter served on Saks. But that doesn't matter. I mean, as you well know, in order to have 54B carve out, you know, say the judgment is final this far, you have to have resolved either all claims against a certain party or, you know, everybody's claims, you know, all claims are all parties. So the issue that I'm having trouble with here is playing through these scenarios and saying what if it's upheld, what if it's reversed, and finding that distinction. Because this court, at least, does not always take the district judge's word for it on the first element of that 54B, the separateness element. I don't think—at least I'll speak personally—I'm not that worried about the fairness. Is it just? Is it appropriate to take this separately? That's a second and independent element under 54B, but it's the first one. Is it really separate enough to override the final judgment rule? There are many—a litigant in a complex case that wishes we didn't have the final judgment rule, but we do, and so sometimes you do have to wait five or six years to get all claims of all parties resolved. Yes, Your Honor. My client's claim, as embodied in this judgment, is limited to basic rent and the pre-judgment insurance, which has accrued. That's it. So what did—what did—what were these consequential damages that somebody else is pursuing? I'm glad you asked that, Your Honor. I would encourage the court— It's not a defined term. No, it is not a defined term in any of the contracts. However, in WEC's 56.1 Statement of Undisputed Facts that they submitted in connection with their motion for partial summary judgment, they do define what the consequential damages are that they are seeking, and they are limited to their own attorney's fees and the lost value of the property that they incurred as a result of losing the property to foreclosure. They have no overlap with the basic rent, just as WEC's counsel represented to the court at the hearing on the 56—or on the Rule 54 certification. I would further observe that, having made that representation to the court—and I know my colleagues, representing Sachs, take a view about whether or not that representation is something they can be held to—having made that representation to the court, and given that the district court then adopted that representation as part of ruling on my Rule 54 certification, as I see it, that's textbook judicial estoppel. To the extent that they may be backtracking or attempting to obscure their position on that issue, I would encourage Sachs to make a motion to the district court to dismiss any claim based on that. But the fact that they are now, if it is the case, attempting to obscure that issue in no way changes the fact that it is a final judgment on my part, and that they've represented to the court that whatever their claims are, they have no overlap with the judgment that was issued to me and my client by the district court. Well, there's a fair amount of factual overlap, right? Like when did things happen and what was the value of the property as a result of the foreclosure and, you know— Well, I—respectfully, Your Honor, I don't think there is. The judgment that was issued to my client is simply the number of months times the basic rent. That's it. And so— So no additional rent? No. Additional rent is defined in Section 4, right? Correct. And we have— And additional rent does include interest at the default rate on all overdue installments of basic rent, so that takes you back into basic rent. And also, it's a pretty broad language, you know, all amounts, liabilities, and obligations which tenant assumes or agrees to pay. I'm just looking one way—I find that kind of vague about whether these—whether this loss of value claim that you're asserting, is anything encompassed in this or is it not?  Your Honor, their point—and you can see it in the record at ECF 128 in paragraphs 52 and 53—the point being made by WEC on the issue of lost value is simply that this property would not have gone into foreclosure but for Sachs's failure to observe and honor their guarantee. And therefore, whatever the value of that property was when it was lost to foreclosure is a consequential damage that was incurred as a consequence of Sachs's failure to honor the guarantee. And so if you—hypothetically, you know, if on the merits—suppose we agreed, 54B—but if on the merits we were to think that Sachs didn't breach any responsibility under this, wouldn't that unravel the whole structure that you're putting together? In other words, we can't have appellate jurisdiction if it comes out one way and no appellate jurisdiction if it comes out the other way. No, but, Your Honor, I would suggest that the construct you're offering there would remove essentially any 54B certification. There can always be different appellate decisions. No, not if it's a genuinely separate claim or literally everything against one particular party has been resolved. I mean, there are—54B isn't supposed to be a gaping exception to the final judgment rule. It's supposed to be an efficient way of resolving things that really are truly separate when you've got multi-party, multi-claim litigation. Of course, Your Honor. However, I mean, given the simplicity of what is included in our claim and, you know, what I would contend, Your Honor, is the unconditional nature of Sachs' guarantee— And everybody's waived the right to go against Sachs for additional rent? No, Your Honor. You need to—I would ask the court to keep in mind the distinction here between—the operative date here is September 30, 2022. That's when the judgment runs up through. Right. Now, the court is undoubtedly aware that my approach in the summary judgment papers was to utilize the liquidated damages formula precisely to avoid some of these questions. However, having been presented with— The court decided it didn't want to do it that way. Once Judge Leinenweber took this approach, we deemed it the most efficient way to deal with our part of the litigation to then waive claims that had not been decided by Judge Leinenweber's Article 54B judgment. I don't see that remanding on that point is going to lead to any greater efficiency simply because—well, first of all, having been presented with Judge Leinenweber's treatment of this as an installment contract, to Judge Kirsch's point, you know, we'd be creating a paradigm where one could never recover on an installment contract until the final installment was passed due. Which was the common law approach, by the way. I mean, you know, Judge Kirsch is pointing out that it's very inefficient, but it was in fact the common law approach. And if you look at things like the restatement of the law of judgments, you see that that's precisely what it was. That was the scope of a claim, each installment. And so, I would say, Your Honor, if the court concludes that the guarantee is for some reason invalid and that Sachs didn't violate it, well then, of course, remand is going to lead to a lot of overlapping issues. However, if the court concludes the guarantee is valid, all that does is enhance the efficiency of the remaining case before the court because now the district court will have guidance going forward on whatever remaining claims there are, which I still contend have no overlap with the portion of the claim that is embodied in our judgment. Can I ask you to address the mitigation issue here, particularly once Stratford took possession of the property? It seems, is Appellant just wrong, is Sachs just wrong that there was discovery on this issue or that there's a duty to mitigate once at least, forget the time that there was a receiver. Just once Stratford takes possession of the property, why is there no duty to mitigate and why should there not be discovery on that issue? Several points on that, Your Honor. First and foremost, I think much of the litigation on the mitigation issue has served simply to complicate and confuse what should not be a very complicated issue under the language of this guarantee. Sachs gave an unconditional guarantee of a lease. The tenant rejected the lease in bankruptcy and Sachs' guarantee waives any defense resulting from the rejection of the lease in bankruptcy. So that by itself, Your Honor, we would contend eliminates any duty to mitigate that would have otherwise attached to this. Although in the course of answering Judge Carson's question, can you address Mr. Dockterman's point, he differentiates between the defenses the tenant would retain and not retain, his answer just now on the waiver question. Yes, Your Honor. And I think the Seventh Circuit's recent decision in Hovde is instructive on this point. And that's a case that both litigants have cited extensively in their briefs. The point there is that Hovde made a distinction between guarantees being absolute and unconditional for purposes of whether or not a party seeking to enforce the guarantee must first proceed against the underlying obligor, the tenant in this case. However, if you read the guarantee language that is at issue in this case, there's two different introductory clauses to the list of waived defenses. The first says that the guarantee is absolute and unconditional regardless. The second goes on to say, and this is a critical distinction from the guarantee that was at issue in Hovde, that the guarantor shall have no defense for any basis resulting from, and then it has a list of causes, and included among those are both rejection of the lease and bankruptcy, as well as the tenant's abandonment or termination of the lease. It's our position, and it's no secret from the papers, that if you read that guarantee and compare it to the guarantee in Hovde, you'll see that there's a clear demarcation between why the court in Hovde didn't deem the guarantee in that case to be a waiver of the particular defense being asserted in that case, and why it's completely different in this case. And just to finish the thought, your position would be, since it's waived, nobody needs to worry about discovery? Yes. In the first instance, Your Honor, I would say that is our position, that the language of this guarantee clearly waives the, any obligation that there would be to mitigate that the duty to mitigate in this case was specifically and directly, to the extent it exists at all, as a result of the tenant's rejection of the lease and bankruptcy. And that's a waiver. But isn't it prior to that? I mean, it's just a duty under Illinois law. It didn't arise because, it's not like, you know, you didn't put it in your bankruptcy schedule. It doesn't arise out of bankruptcy law, and it doesn't really arise out of the rejection. It's just an underlying feature of Illinois law of contract and leases. Your Honor, the existence of the law is certainly a feature of Illinois law. But to the extent that it has any application in this case, that resulted directly from the tenant's rejection of the lease and bankruptcy. If the tenant doesn't reject the lease and bankruptcy, and either the tenant pays or SACS honors its guarantee, then we're not talking about any obligation to mitigate here. So I do think it is as a result of the rejection of the lease and bankruptcy. And to the extent that the court looked at it differently and thought that bankruptcy was not part of this, the tenant's default under the lease is also specifically listed among the causes that are waived in terms of whether or not the guarantor can assert defenses. So yes, Your Honor, our first position is that the language of the guarantee waives any obligation that may have existed to mitigate. Secondly, Your Honor, the obligation to mitigate here, to the extent it exists, is all premised on a statute that speaks exclusively to landlords and lessees. Now, there's no question that there are a number of cases out there in Illinois law that have extended the obligation to cases involving guarantors. But there's very little jurisprudence out there concerning whether or not it should run upstream in the other direction to mortgagees. And to Judge Kirsch's point and question, once the mortgagee, in this case my client, took possession of the property, that is extremely removed in both substance and time from the point at which the lease had been rejected. And so what you're really dealing with there now is saying that you have a party that is, because at that point it is a, not merely a mortgagee, but a third party, well it's not a third party, but a purchaser at a mortgage foreclosure sale. And so we're taking a statute directed to landlords and now saying that applies through the mortgagee to the subsequent owner of the property at a foreclosure sale. And that's a very distant extension of a legislative act in my view. It reminds me of questions of privity, basically. Do you trace it back that far? I would also point out, Your Honor, that to the extent that the argument here is that the mortgagee's obligation to mitigate flows through the landlord, the landlord here has its obligation to mitigate cut off by the foreclosure. And so to the extent that the mortgagee is simply assuming the landlord's obligation to mitigate, the landlord no longer has an obligation to mitigate under the language of this lease once the mortgagee exercises its rights. So I don't see that there can be a continuation of that right to the mortgagee on the basis of that sort of theory. Are you pointing to this clause, tenant agrees that landlord's duty to re-let under Section 22 shall be limited and subject by the right of mortgagee to exercise its rights under the mortgage? Yes, Your Honor. Okay, that seems vague to me. The exercise of such rights being an event over which the landlord has no control. Why does that mean no subsequent owner has a duty to mitigate? Why is it just that if a receiver is appointed, as here, the original owner has no duty to mitigate? Well, the subsequent owner, Your Honor, would not be a landlord. They'd never be in a landlord-tenant relationship with the tenant, in this case, or by extension with Sachs as guarantor. At that point, following Your Honor's logic, you could arguably say that a third-party purchaser at a foreclosure sale would then somehow assume that duty. To me, the purpose of that language there, and I recognize it's not a model of clarity, is because it needs to be recognized as a practical matter that once a mortgagee begins to exercise foreclosure remedies, that the ability of any particular party to actually exercise what needs to be done in order to mitigate damage starts to become very much more complicated. Let me take it in a different direction. Mr. Duchtman referenced how many cases we have here involving these parties and the circumstance. Of course, we're not bound by what any district court has done, but should we at all be concerned that Judge Valderrama in the district court ruled in a different way and didn't find the waiver to be a barrier at all in the way that you're arguing? Well, Your Honor, I would say that it is important for this court to look at Judge Valderrama's decision, look at what Judge Leinenweber has done, and in particular, review the Hovde decision, because Hovde was based in large measure on the cases cited by Judge Valderrama and consider for itself if the plain language of these waivers result in a waiver of the duty to mitigate to the extent one exists. So, the answer is Your Honor should be concerned with what any district court in this district has done in looking at these, but I think the plain language of this guarantee in light of this court's ruling in Hovde is persuasive and perhaps dispositive. So, it was Stratford who moved for the appointment of the receiver, right? It was, Your Honor. And so, does that in any way undermine the idea that the appointment of the receiver prevented Sachs from mitigating? You wanted the substitution. Right, and I believe Your Honor means WEC, the former owner? Well, the receiver to manage WEC's assets. Okay. So...  To my reading and my way of viewing the world here, Sachs, putting Sachs aside for a moment, my client as a foreclosing mortgagee in moving to have a receiver appointed, first and foremost that is an act of mitigation because the receiver is charged by law with preserving the property and more to the point, Your Honor. So, you think the receiver would have had no power to mitigate? No, the receiver was fully empowered to do it. And really, that's the heart of the matter, Your Honor. We have a receiver here who's charged by law and by the order appointing him as an agent of the court with preserving the property. And so, at that point, anybody who has an issue with what the receiver's doing, their obligation is to take that up with the circuit court. Go to the Circuit Court of DuPage County, yeah. All right. Well, I don't want to waste the court's time just reading my brief back to you. If you have any other questions, I'd be happy to have an opportunity to address them. Otherwise, I'll take my leave and thank the court again for taking time to hear us today. Thank you, Mr. Proceda. Mr. Dockterman. Thank you very much, Your Honor. May I begin by noting that when you have a piece of property and you have a tenant in that piece of property, it really doesn't make any difference whether the landlord is A or B or C if there's a landlord who's trying to enforce a lease against Sachs. They have a duty to mitigate if Sachs leaves. And the same thing was true as if Carson's left or anybody else who's a tenant. Illinois law is very clear on that. Snyder v. Ambrose, which is in our briefs, makes it clear that not requiring evidence, let alone proof, regarding the plaintiff's mitigation of damages was prejudicial error. And that's not a place that we ever got to. The suggestion made by Stratford that because there's a mortgagee doesn't relieve the mortgagee of the duty to try to mitigate. And if the mortgagee had relet the premises so that there was a tenant in place for all but five months, my client's responsibility is for those five months. They don't get to double dip. I get the credit for all of that. So the fact that there is a receiver, the fact that there is a mortgagee, that doesn't change things as the court pointed out. It only means that the preceding landlord doesn't have that responsibility but it doesn't relieve the landlord of that responsibility. There's a very good summary of all of the Illinois law on this in Lyon Financial Services against Bella Medica by Judge Valderrama. I'm sorry, by Judge Duryagian. It's at 738F sub 2nd 856, and that's also in the party's briefs. And it goes through the risk associated with the guarantor that comes from mitigation. And all of that got set aside by the trial court. And the reason that it got set aside was because the court was moving forward. Now, to the question that you asked, Judge Wood, about whether or not anybody could be held to something, the idea that there was a statement that was made by WEC 3 in its motion for partial summary judgment about what it was. That pleading was stricken, and the striking is at ECF 137. It's not in the record. Since that time, WEC has amended to say that it's specifically seeking rent going forward. And it's specifically seeking these other damages, going back to the original question of what were consequential damages. So however you look at this, and whether it's Judge Valderrama's interpretation or Judge Otto's interpretation or Judge Hayes' interpretation or Judge Kubasiak's interpretation, all of whom have cases, or Judge Leinenweber's interpretation, it's driven by facts. And the error in this case was to ignore all of the facts, particularly with respect to Stratford, and then to allow Stratford to come straight to this court without allowing us a defense. In each of the cases that we've tried in the Illinois state courts, there is a finding of liability against sex. The trial has been on mitigation and what has been done. And who has that duty and when it obtains is exactly the problem that we've explored and discovered. So this is a bad set of building blocks leading to an improvident appeal. And the improvidence of the appeal is exactly why 54B is used sparingly, not the gaping hole, as the court said, that this would create if you take this. And finding a stopgap, putting a Band-Aid on that hole, doesn't solve the problem and sets a very dangerous precedent. I just want to take a minute to address the Hubde case as well. This court did review the language in Hubde, but it's a bit of a circular argument because you relied upon the analysis that Judge Leinenweber did to say, OK, that's how we're going to interpret the guarantee. And now, even though that was an incomplete record, it's being used again, and so it becomes something that has much more meaning than, frankly, it deserves. God bless you. Thank you. Looking at the guarantee, understanding the facts having to do with the guarantee, and concluding how the parties are bound and what their duties of mitigation were is what's to happen in the district court. It is improvidently here. We should all be back in the district court for a determination of all of these issues. And on remand, we respectfully ask this court to direct the trial court, the district court, to open discovery and allow us to explore the issues of mitigation and what happens to a guarantor, whether it's a guarantor or a surety, not just to make assumptions about that the way that Illinois courts would do. Thank you very much. Thank you, Mr. Dockerman. And the case will be taken under advisement.